UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| **CALVIN BRIDGES, Individually and For Others Similarly Situated,**<br><br>Plaintiff,<br><br>v.<br><br>**RANGERS ENTERPRISE SATELLITE, LLC**<br><br>Defendant. | Case No. 3:20-CV-108-DMB-JMV<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COMPLAINT

Plaintiff, Calvin Bridges, brings this action against his former employer, Rangers Enterprise Satellite, LLC, and alleges as follows:

### I.   JURISDICTION

1.   Plaintiff brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* to recover unpaid overtime compensation under §16(b) of the FLSA. This Court has jurisdiction under 28 U.S.C. §1331.

### II.   PARTIES

2.   Plaintiff, Calvin Bridges ("Bridges" or "Plaintiff") is domiciled in DeSoto County, State of Mississippi, and worked for Defendant performing installation, repair or construction related to satellite dish equipment from approximately November 2019 to February 2020.

3.   Plaintiff has consented to filing the instant action. (Exhibit "A").

4.   Defendant, Rangers Enterprise Satellite, LLC ("Defendant" or "Rangers") is a Georgia limited liability company with its corporate office located at 1609 Meredith Park Drive,

1

McDonough, Georgia 30253. Rangers may be served through its registered agent, Rinnel Williams, at that same address.

### III.   VENUE

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a significant portion of the facts giving rise to this lawsuit occurred in this District. Specifically, Plaintiff performed work for Defendant in this District, Defendant maintained a business operation within this District, or because a substantial part of the events and/or omissions giving rise to the claims asserted herein arose in a substantial part within this District.

### IV.   COVERAGE UNDER THE FLSA

6.      At all times hereinafter mentioned, Defendant was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

7.      At all times hereinafter mentioned, Defendant was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

8.      At all times hereinafter mentioned, Defendant was and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

9. At all times hereinafter mentioned, Plaintiff and the Collective Members (as defined below) were engaged in commerce or in the production of goods for commerce per 29 U.S.C. §§ 206-207.

## V. FACTS

10. Defendant Rangers provides satellite installation and repair services to satellite providers in Mississippi and other states.

11. Defendant utilizes workers such as Plaintiff and the Collective of similarly situated individuals as "technicians" to perform installation, repair and construction, regarding satellite dish equipment and classifies these workers as independent contractors.

12. Defendant pays these technicians a "piece rate" or by the job. Defendant's technicians are given their assignments and instructions through the Dish Network app on their phones as to specific work which must be done that day or within a matter of hours, and each contractor is provided with specification books as to how each such installation, repair, or construction work is to be performed. Defendant's technicians are required to report to the location of their first assignment at 8:00 a.m. each workday.

13. All of the telecommunications equipment used by Plaintiff and those similarly situated must be picked up from a Fed Ex facility or a storage unit rented by Defendant.

14. Virtually all technicians work well over forty (40) hours per week.

15. Typically, technicians work(ed) over fifty-five (55) hours per week without overtime compensation.

16. Plaintiff and the Collective of technicians worked seven (7) days per week. They would report at 8:00 a.m. each morning and would work until at least 9:00 p.m. most nights and often as late as 10:00 p.m.

17. If Defendant, or its satellite providers, are unsatisfied with work performed by the technicians, Defendant requires such technicians to go out and correct any deficiency, and to make repairs. On such occasions, the technicians are not paid for their time working to correct such issues.

18. On numerous occasions, Plaintiff was required to review unsatisfactory work performed by other technicians and to take pictures of the unsatisfactory work to send to Defendant. Plaintiff was then required to repair the unsatisfactory work performed by other technicians. Plaintiff was not compensated for those repairs.

19. Plaintiff's and the Collective's wages were based on the job performed, not the amount of hours worked, regardless of whether Plaintiff or any Collective member worked more or less than forty (40) hours in a workweek.

20. Plaintiff and the Collective routinely worked in excess of forty (40) hours per week as part of their regular job duties.

21. Despite the fact that Plaintiff and the Collective worked more than forty (40) hours per week, Defendant failed to pay Plaintiff, and those similarly situated to him, overtime compensation at a rate of time and a half their regular rate of pay for hours worked over forty (40) in a workweek.

22. Defendant has employed and is employing other individuals as satellite technicians who perform(ed) the same or similar job duties under the same payment scheme as Plaintiff and the Collective Members.

23. Defendant misclassified Plaintiff and Collective as independent contractors, when in fact, they were employees.

24. At all times relevant to this case, Defendant had knowledge of Plaintiff's and the Collective's regular and overtime work. Defendant scheduled and assigned work and set deadlines for work to be completed. Plaintiff's and the Collective's work benefitted Defendant.

25. Plaintiff and the Collective were granted minimal discretion or independent judgment in the method and manner that work was performed. Instead, many of the job duties as a technician were controlled by Defendant. Plaintiff and the other technicians were required to follow Rangers' policies, procedures and rules governing satellite installation and repair.

26. Plaintiff and the other technicians were required to perform their jobs under the supervision of Defendant's management and were required to report to and check in with Defendant's management.

27. Defendant required Plaintiff and the other technicians to wear a company uniform and badge.

28. Plaintiff and the Collective did not set their own schedules. Instead, Defendant assigned work to Plaintiff and the other technicians and determined their schedules. Because Defendant's controlled their work schedules, Plaintiff and the other technicians were not free to do work for other employers.

29. Plaintiff and the other technicians used satellite equipment provided by Defendant to complete their satellite installation and repair assignments for Defendant.

30. The determining factor as to whether Plaintiff and the Collective were employees or independent contractors under the FLSA cannot be regulated by any contract or agreement. Instead, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. *See, Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Under the economic reality test, employee status turns on whether the individual is, as a matter of

economic reality, in business for himself and truly independent or, rather, is economically dependent upon finding employment in others.

31. Courts generally utilize the following factors to determine economic dependence and employment status:

    a. The degree of control exercised by the alleged employer;

    b. The relative investment of the alleged employer and employee;

    c. The degree to which the employee's opportunity for profit and loss is determined by the employer;

    d. The skill and initiative required in performing the job;

    e. The permanency of the relationship; and

    f. The degree to which the alleged employee's tasks are integral to the employer's business.

32. Applying the economic reality test, Plaintiff and the Collective were economically dependent on Defendant for all their income and were thus employees and not independent contractors.

33. Plaintiff and the Collective were not in business for themselves and were not truly independent, but rather were economically dependent upon employment with Defendant.

34. Plaintiff and the Collective were not engaged in an occupation or business distinct from that of Defendant. To the contrary, the work performed by Plaintiff and the Collective was integral to and the basis of Defendant's business of providing satellite installation and repair.

35. Defendant retained complete and total control over the activities of Plaintiff and the Collective and regulated all aspects of the job.

36. Plaintiff's and the Collective's economic status was inextricably linked to conditions over which Defendant had complete control, including, but not limited to, the assignment and scheduled hours of work shifts, detailed specifications for how they were expected to perform their work, and instructions for obtaining prior approval from Defendant to deviate from job specifications.

37. Plaintiff's and the Collective's financial investment was minor compared to the investment made by Defendant in the business at hand. All capital and risk belong to Defendant. Absent Defendant's investment in the provision of customers to whom Plaintiff and the Collective provided cabling services, no money would be earned.

38. The jobs of Plaintiff and the Collective as technicians were an integral part of Defendant's business of providing satellite installation and repair and was critical to Defendant's success.

39. Furthermore, Defendant required Plaintiff and Collective to travel between job sites during the day without paying them for all drive time.

## VI. COLLECTIVE ALLEGATIONS

40. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

41. Plaintiff and the Collective performed the same or similar job duties as one another in that they provided satellite installation and repair services for Defendant.

42. Plaintiff and the Collective were classified as independent contractors and not employees, in violation of the FLSA.

43. All of Defendant's technicians are paid a piece rate (or by the job).

44. Plaintiff and the Collective were subjected to the same pay practice by being paid a piece rate and not compensated at time-and-one-half for all hours worked in excess of forty

(40) hours in a workweek during the period in which they were misclassified as independent contractors. Thus, the Collective is owed overtime wages for the same reasons as Plaintiff.

45. Defendant's failure to compensate employees for all hours worked in excess of forty (40) hours in a workweek, as required by the FLSA, results from a policy or practice of failure to assure that satellite technicians are paid for overtime hours worked.

46. This policy or practice was applicable to Plaintiff and the Collective. Application of this policy or practice does not depend on the personal circumstances of Plaintiff or those joining this lawsuit. Rather, the same policy or practice of classifying Plaintiff and the Collective as independent contractors and FLSA overtime exempt, in violation of the FLSA, resulted in the non-payment of overtime to Plaintiff applies to all Collective Members.

47. Accordingly, the Collective Members are properly defined as:

**All satellite technicians who worked for Rangers Enterprise Satellite, LLC within the last three (3) years, and who were classified as independent contractors and not paid an overtime premium for all hours worked in excess of forty (40) in a workweek.**

### VII. VIOLATION OF THE FLSA FOR FAILURE TO PAY OVERTIME COMPENSATION

48. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

49. Plaintiff and the Collective are/were entitled to be paid one and one-half times their regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

50. During his employment with Defendant, Plaintiff and the Collective regularly worked more than forty (40) hours in a workweek and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty (40) in a workweek.

51. In addition, Defendant did not maintain and keep accurate time records as required by the FLSA for Plaintiff and the Collective.

52. Defendant knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiff and the Collective.

53. Defendant did not act in good faith or in reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, 29 U.S.C. §201, *et seq.*, (c) Department of Labor Wage & Hour Opinion Letters, or (d) the Code of Federal Regulations.

54. Defendant was previously sued in this Court in April 2016 for violations of the FLSA based on a substantially similar payment scheme. Defendant has been on notice since that time that its payment scheme violates the FLSA, and therefore Defendant did not act in good faith in formulating its pay practices. During the relevant period of within the last three years, Defendant violated §7(a)(1) and §15(a)(2) of the FLSA by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid for one or more workweeks without compensating such employees for their work at a rate of at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

55. Defendant also failed to post required FLSA informational listings as required by the FLSA for Plaintiff and the Collective. As a result of Defendant's willful violation of the FLSA, Plaintiff and the Collective are entitled to liquidated damages.

56. As a result of Defendant's intentional, willful, and unlawful acts in refusing to pay Plaintiff and the Collective one and one-half times their regular rate of pay for each hour worked in excess of forty (40) per work week in one or more workweeks, Plaintiff and the Collective Members have suffered damages plus incurring reasonable attorneys' fees and costs.

### VIII. VIOLATION OF THE FLSA FOR FAILURE TO PAY MINIMUM WAGE

57. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

58. As stated above, Defendant employed a policy of paying Plaintiff and the Collective as "piece rate" by the jobs they completed, regardless of the number of hours actually worked.

59. The "piece rate" paid by Defendant would vary depending on what kind of installation or repair the Plaintiff and Collective performed. Plaintiff and the Collective often worked in excess of eighty (80) hours per week and only received the piece rate of pay without any additional compensation for the hours worked in excess of forty (40) hours within a workweek.

60. There have been many weeks where Plaintiff and those similarly situated have been paid less than the statutory minimum wage for all hours worked as a result of Defendant's piece rate method of payment.

61. Such policy and practice violate the FLSA's minimum wage provisions.

62. Defendant's failure to pay Plaintiff and the Collective the full minimum wage is a violation of 29 U.S.C. §206.

63. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

### PRAYER

WHEREFORE, Plaintiff, Calvin Bridges, prays for relief as follows:

    a. An order allowing this action to proceed as a collective action under the FLSA and directing notice to all similarly situated workers;

b. Judgment awarding Plaintiff and those similarly situated all unpaid overtime compensation, unpaid minimum wage compensation, liquidated damages, attorneys' fees and costs under the FLSA;

c. An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

d. All such other and further relief to which Plaintiff and those similarly situated may show themselves to be justly entitled.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

Respectfully submitted:

/s/ Christopher W. Espy
Christopher W. Espy, Esq.
Espy Law, PLLC
P.O. Box 13722
Jackson, MS 39236
Telephone: (601) 812-5300
Chris.espy@espylawpllc.com